UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:02-CR-20 CEJ |
| ) | |
| CHRISTOPHER CARPENTER, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Pursuant to 28 U.S.C. § 636(b), the Court referred all pretrial matters in this case to United States Magistrate Judge Frederick R. Buckles for determination and recommended disposition, where appropriate. On April 1, 2005, Judge Buckles issued a Memorandum, Report and Recommendation with respect to the motion filed by defendant Christopher Carpenter to suppress evidence and statements. Thereafter, the United States filed objections to the recommendation that the suppression motion be granted. The defendant has filed a reply to the government's objections.

Pursuant to 28 U.S.C. § 636(b)(1), the Court is required to review *de novo* the findings and conclusions of the magistrate judge to which objection is made. In the instant case, the United States does not object to the factual findings of the magistrate judge. Moreover, the Court finds that the facts as found by the magistrate judge are fully supported by the evidence adduced at the suppression hearing. The government's objections are directed to the magistrate

judge's application of the law to those facts.  Consequently, the Court must determine whether the magistrate judge's legal conclusions are correct.

**I. Background**

The defendant was driving east on Interstate Highway 44 in Phelps County, Missouri, on December 18, 2001, carrying a quantity of cocaine.  Posted along the side of the highway were signs advising that a drug enforcement checkpoint was ahead and that drug dogs were in use.  These signs had been placed by the Phelps County Sheriff's Department as a ruse, as it was believed that drug traffickers would exit the highway at the Sugar Tree Road exit in order to avoid Upon seeing the signs, the defendant exited the highway to avoid being searched at a checkpoint.

When the defendant saw the signs, he exited the highway at Sugar Tree Road and drove onto a side road.  The defendant then began looking for a service station because his car was low on gas. After noticing that a police car was behind him, the defendant became concerned that he had driven into a trap.  He decided to make a U-turn and drove onto the side of the road.  Phelps County Deputy Sheriff David Rightnower, who was driving the police car, pulled in behind the defendant's car, activating the emergency flashing lights in the process.  Deputy Rightnower testified that he stopped behind the defendant's vehicle because it had Texas plates, it had just exited the highway, and because he felt the defendant probably had drugs in his possession.

Deputy Rightnower approached the defendant's vehicle, and questioned the defendant about his reason for being on the side road, where he had come from and where he was destined.  The defendant answered the questions, stating that he was not lost, that he had been looking for a service station but was unable to find one, and that he was traveling from Austin, Texas to New York state.  At Deputy Rightnower's request, the defendant produced a Texas driver's license and documents showing that the vehicle had been rented in El Paso, Texas.  The officer took the license and rental papers to his patrol car where he remained for 4 or 5 minutes.

When he returned to the defendant's car, Deputy Rightnower asked him what was in the cargo area, to which the defendant replied boxes of tile.  Deputy Rightnower then asked for permission to look into the boxes.  The defendant stated that the boxes were packaged up and that he didn't understand why the officer needed to look inside them.  At that point, Deputy Rightnower told the defendant that he had exited the highway at a drug interdiction area, that he believed the defendant had done so to avoid the checkpoint, and that he believed that the defendant was carrying drugs in the car.  Deputy Rightnower also told the defendant that if he refused to consent to a search then a drug-sniffing dog would be called.  When the defendant again stated that he saw no reason for the search and refused consent, Deputy Rightnower asked the defendant to step out of the car.  The defendant complied, and Deputy Rightnower conducted a pat-down search for weapons.

Shortly thereafter, a drug detection dog was brought to the scene and alerted positively to the scent of drugs in the defendant's car. Upon searching the car, Deputy Rightnower found a number of plastic-wrapped bundles containing what was later determined to be cocaine. The defendant was placed under arrest and later, after being advised of the Miranda warnings, made statements to the police.

**II. Discussion**

The magistrate judge correctly concluded that a Fourth Amendment seizure of the defendant occurred either when Deputy Rightnower took the defendant's driver's license and car rental documents to his patrol car or when the officer told the defendant that he suspected him of carrying drugs and asked him to get out of his vehicle. For it was at either point that a reasonable person would not have felt free to leave. See Florida v. Royer, 460 U.S. 501. No objection is made to this conclusion.

The magistrate judge went on to determine whether, under the totality of circumstances, the facts known to Deputy Rightnower at the time of the seizure created a reasonable, articulable suspicion that the defendant was involved in some criminal activity. See Terry v. Ohio, 392 U.S. 1, 21 (1968). After considering the evidence, the magistrate judge concluded that the facts and circumstances did not give rise to a reasonable suspicion justifying the continued detention of the defendant for purposes of a search of his vehicle.

In reaching this conclusion, the magistrate judge wrote, "the fact that the defendant exited the highway at the exit where the checkpoint signs were located can play no part in any reasonable equation." (Memorandum, Report and Recommendation, at p. 19). The government specifically objects to this statement, arguing that such behavior should be included in the calculus for determining reasonable suspicion. When this behavior is included, the government argues, "there is strong evidence of reasonable suspicion." (Government's Objections to the Magistrate Judge's Report and Recommendation, at p. 14).

It is undisputed that exiting the highway at the location of drug checkpoint signs, standing alone, does not establish reasonable suspicion. United States v. Yousif, 308 F.3d 820, 829 (8th Cir. 2002). The question here is whether reasonable suspicion can be found to exist when that behavior is considered with other facts and circumstances known to Deputy Rightnower at the time. Specifically, the other facts and circumstances known to Deputy Rightnower at the time of the seizure, as asserted by the government and addressed by the magistrate judge in his Memorandum, were: (1) the defendant was traveling on Interstate Highway 44, which was a known route for transporting illegal drugs; (2) the defendant's car bore license plates from Texas, a state known as a source for drugs; (3) the defendant stopped for no apparent reason on a road in a rural area; (4) the defendant's vehicle was rented; (5) the

defendant stated that he was looking for a gas station[1]; (6) the defendant stated that he was traveling from Austin when the rental documents showed that the vehicle had been rented in El Paso; (7) the defendant "responded strangely" when asked about the boxes in the cargo area of the vehicle[2]; and (8) the defendant appeared nervous.

In Yousif, 308 F.3d at 823-824, a case that involved an Interstate 44 ruse checkpoint located at the Sugar Tree Road exit, the Eighth Circuit considered whether the totality of circumstances presented there supported reasonable suspicion justifying the detention of the defendant. Like the defendant in this case, Yousif also exited the highway at Sugar Tree Road after seeing the signs warning of a drug checkpoint ahead. Several law enforcement officers were standing at the top of the exit ramp, and a sign indicating the presence of a police checkpoint and two marked patrol cars were visible drivers approaching the top of the ramp. Yousif, whose vehicle bore Oklahoma plates, drove halfway up the ramp and slowed, almost to a halt. After being directed by the officers, Yousif drove forward and stopped at the checkpoint. Yousif produced an Arizona driver's license and rental documents for the car. The officer who questioned him detected a strong berry-like fragrance

---

[1] The government characterized this statement as false. However, Deputy Rightnower did not ask the defendant why he did not stop at any of the gas stations located at other nearby exits.

[2] The government does not explain why it believes the defendant's answer that the boxes contained tile was strange.

coming from the interior of the vehicle, and noticed that Yousif's hands were shaking such that he almost dropped his license.

The Eighth Circuit, citing <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979), wrote that "it is unreasonable under the Fourth Amendment to stop a vehicle and detain its driver to check his or her license and registration, unless the officers have at least articulable and reasonable suspicion that the driver is not licensed, that the automobile is not registered, or that the automobile or one of its occupants is otherwise subject to seizure for a violation of the law." <u>Yousif</u>, 308 F.3d at 829. Before concluding that the initial stop and detention of Yousif's vehicle constituted an unlawful seizure under the Fourth Amendment, the court analyzed the totality of circumstances as follows:

> The facts that Yousif's vehicle had out-of-state license plates and was traveling on a highway that was "known" to the officers as a drug trafficking corridor cannot alone justify the stop because "[t]oo many people fit this description for it to justify a reasonable suspicion of criminal activity." United States v. Gray, 213 F.3d 998, 1001 (2000) (Gray) (quoting Eustaquio, 198 F.3d at 1071). As to the additional facts that Yousif took an exit just past the ruse checkpoint warning signs and then slowed down upon observing the actual checkpoint, we are chary to conclude that these provide sufficient additional circumstances to justify the intrusion. We first note that these circumstances never would have arisen but for the existence of the illegal checkpoint. Moreover, because there is nothing inherently unlawful or suspicious about a vehicle (even one with out-of-state license plates) exiting the highway, it should not be the case that the placement of signs by the police in front of the exit ramp transforms that facially innocent behavior into grounds for suspecting criminal activity. Reasonable suspicion cannot be manufactured by the police themselves. Cf. Wong Sun, 371 U.S. at

>     485, 83 S.Ct. 407 ("A contrary holding here would mean
>     that a vague suspicion could be transformed into
>     probable cause for arrest by reason of ambiguous
>     conduct which the arresting officers themselves have
>     provoked."). Finally, the checkpoint was not where the
>     police signs indicated it would be and, therefore, any
>     motorist would likely be surprised upon discovering it.
>     Under such circumstances, even an innocent traveler
>     might be inclined to hesitate out of surprise,
>     annoyance, or nervousness. We believe that Yousif's
>     hesitancy, while relevant, is materially
>     distinguishable from the conduct that was at issue in
>     Wardlow, 528 U.S. at 124, 120 S.Ct. 673, where the
>     defendant engaged in "unprovoked flight upon seeing the
>     police." See also United States v. Clay, 640 F.2d 157,
>     160 (8th Cir.1981) ("The government's emphasis that
>     appellant's 'hesitancy' created individualized
>     suspicion falls far short of those cases dealing with
>     flight."). In sum, giving due regard to the general
>     expertise and specific knowledge of the law enforcement
>     officers involved, we nevertheless hold that the
>     totality of the circumstances cited by the government
>     did not support a reasonable suspicion, prior to the
>     stop, that Yousif was engaged in criminal activity. Cf.
>     Gray, 213 F.3d at 1000-01 (holding that reasonable
>     suspicion finding was not supported by the totality of
>     circumstances cited by the government, including facts
>     that the defendant was standing on the street in a
>     high-crime area at night, in cold weather, and hurried
>     across the street upon seeing law enforcement
>     officers).

Yousif, 308 F.3d at 828-29 (footnote omitted).

The similarity of the facts in <u>Yousif</u> compel the same analysis and conclusion here. After considering all of the circumstances discussed above, including the defendant's exit from the highway near the drug checkpoint signs, the Court finds that the seizure of the defendant in this case was made in violation of the Fourth Amendment. Therefore, the objections of the United States are overruled.

Accordingly,

**IT IS HEREBY ORDERED** that the Order and Recommendation of United States Magistrate Judge Frederick R. Buckles is sustained, adopted, and incorporated herein.

**IT IS FURTHER ORDERED** that the motion of defendant Christopher Carpenter to suppress evidence and statements [Doc. # 21] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 13th day of October, 2005.